IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUAN FRANCISCO AVILA,<br>TDCJ No. 02404445, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:24-cv-02956-E-BW |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Petition for a Writ of Habeas Corpus by a Person in State Custody, received on November 25, 2024. (Dkt. No. 3.) Based on the relevant filings and applicable law, the Court should **DENY** the petition.

## I. BACKGROUND

Petitioner Juan Francisco Avila is in custody pursuant to a Texas state-court indictment and conviction for aggravated sexual assault of a child. (Dkt. No. 17-1 at 15 (Indictment).) Following a jury trial, he was found guilty and sentenced to a term of 75 years of imprisonment. Avila's conviction was affirmed on direct appeal in *Avila v. State*, No. 05-22-00727-CR, 2024 WL 445949 at *1 (Tex. App.—Dallas Feb. 6, 2024, pet. ref'd), and his subsequent application for state habeas relief was denied. (Dkt. No. 17-17.)

Avila now seeks federal habeas relief under 28 U.S.C. § 2254, asserting six grounds for relief. Specifically, he contends that (1) he is actually innocent because

1

there was no evidence presented at trial that supported his conviction; (2) trial counsel rendered ineffective assistance by failing to investigate and prepare his defense; (3) trial counsel was ineffective for failing to call and subpoena certain character witnesses; (4) trial counsel was ineffective for failing to present a defense and adequately advise him regarding a plea offer; (5) his rights under the Confrontation Clause were violated; and (6) trial counsel was ineffective for  failing to object to alleged shackling during trial.  (Dkt. No. 3 at 5-15.)

Avila contends that these alleged errors violated his constitutional rights, and he seeks relief from his conviction and sentence.  As discussed below, Avila is not entitled to habeas relief on any of his claims.

## II.  LEGAL STANDARDS

"Federal habeas features an intricate procedural blend of statutory and caselaw authority."  *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019).  In the district court, this process begins with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review."  *Id.* (citation omitted).  Under the AEDPA, a state prisoner may not obtain federal habeas relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This standard "restricts the power of federal courts to grant writs of habeas corpus" and ensures that "state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 592 U.S. 111, 124 (2020). A state court decision is "contrary" to clearly established federal law only if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)). A decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing principle" but "unreasonably applies that principle to the facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Critically, the question is not whether the state court was incorrect, but whether its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Federal courts must

"determine what arguments or theories supported . . . or could have supported the state court's decision" and then ask whether fair-minded jurists could disagree that those arguments are inconsistent with Supreme Court precedent. *Id.*

Under this highly deferential standard, a petitioner must do more than show the state court's factual or legal conclusions were incorrect, he must show that they were "objectively unreasonable." *Williams*, 529 U.S. at 409-10. As the Supreme Court has explained, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). State court factual findings are "presumed to be correct" unless the petitioner can rebut this presumption by "clear and convincing evidence." *Id.* at 293.

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) ("As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

4

## III.  ANALYSIS

**A.    Avila's claim of actual innocence is procedurally defaulted.  (Ground One)**

Avila labels his first ground as "actual innocence," but the substance of his claim—that the victim's testimony failed to corroborate the allegations in the indictment and that no physical evidence supported the conviction—is still a challenge to the sufficiency of the evidence, not a freestanding actual innocence claim.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ex parte Williams*, 703 S.W.2d 674, 679-80 (Tex. Crim. App. 1986) (treating a "no evidence" claim as an insufficiency claim where the record is not wholly devoid of evidentiary support).  Because Avila attacks the evidence presented at trial rather than supplying new evidence demonstrating factual innocence, his claim is properly analyzed as a sufficiency challenge.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (distinguishing actual innocence gateway claims, which require new evidence, from sufficiency challenges).

That claim is procedurally defaulted and may not be entertained by this Court.  It is long settled under Texas law that the sufficiency of the evidence may only be raised on direct appeal and is not cognizable in a state habeas proceeding.  *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994).  Avila did not raise a sufficiency challenge on direct appeal and instead raised it for the first time in his state habeas application, where the Texas Court of Criminal Appeals declined to consider it on the merits.  (*See* Dkt. No. 17-18 (State

Writ); *see also* Dkt. No. 17-17 (Action Taken).)  Because Texas courts consistently refuse to entertain such claims in post-conviction proceedings, Avila has failed to exhaust his state court remedies in a procedurally proper manner, and the claim is procedurally defaulted in this Court.  *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996).

Even so, a federal court may review a procedurally defaulted claim if the petitioner demonstrates cause for the default and actual prejudice or establishes that failure to consider the claim would result in a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Smith v. Director*, TDCJ-CID, No. 3:20-CV-2947-G (BT), 2022 WL 18359120, at *2 (N.D. Tex. Oct. 28, 2022) (neither a petitioner's "*pro se* status" nor his "lack of legal training and knowledge" constitutes cause to excuse default), *rec. adopted*, 2023 WL 289721 (N.D. Tex. Jan. 18, 2023).  Here, however, Avila has not identified any cause for his failure to raise this claim on direct appeal, nor has he presented new reliable evidence of actual innocence that would permit the Court to excuse the default under the narrow miscarriage-of-justice exception.  *See Schlup*, 513 U.S. at 324.  Relief based on Ground One should therefore be denied.

**B.    Avila's claims of ineffective assistance by trial counsel do not meet the *Strickland* standard.  (Grounds Two, Three, Four, and Six)**

When, as here, a petitioner claims ineffective assistance of counsel, that claim is subject to both AEDPA's deferential standard and the substantive framework established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The result is a

review that is "doubly deferential," applying first to the state court's adjudication of the claim and second to counsel's professional judgment. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011) (stating that a court's review requires a "highly deferential" look at counsel's performance) (citation omitted)).

That "double deference" requires more than showing that counsel's performance was imperfect or that the outcome might have been different. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The petitioner must also prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Buck v. Davis*, 580 U.S. 100, 119 (2017) (quoting *Strickland*, 466 U.S. at 687).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This means a petitioner must overcome both the strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance," and that "under the circumstances, the challenged action might be considered sound trial strategy."

7

*Richter*, 562 U.S. at 105.  Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

As explained below, Avila's claims do not meet the *Strickland* standard.

1.  Ground Two: failure to investigate

Avila contends that his trial counsel was constitutionally ineffective for failing to conduct an independent investigation, hire an investigator, recover surveillance footage from his apartment, retrieve his work schedule, consult an expert witness, and call on Avila for his own version of the events.  (*See* Dkt. No. 3 at 7.)  He further alleges that counsel advised him not to testify during the guilt/innocence phase because counsel had failed to prepare him.  These allegations, however, do not satisfy either prong of *Strickland.*

The record contradicts Avila's factual premises.  It reflects that counsel undertook investigative efforts.  Counsel retained an investigator, J. Joplin, and advised the trial court that he experienced difficulty locating witnesses.  (Dkt. No. 17-6 at 10-11.)  Counsel also requested appointment of a second chair to assist with evidence gathering and witness location, a request the trial court denied.  (*See id.* at 11.)  These actions defeat any suggestion of wholesale failure to investigate.  *See Strickland*, 466 U.S. at 691 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").  At most, Avila disputes the scope of that investigation, which without more, does not establish deficient performance.

To the extent Avila identifies specific evidence that counsel allegedly failed to obtain, his allegations remain insufficient.  A petitioner must do more than speculate that additional investigation would have been helpful.  He must identify what the investigation would have revealed and explain specifically how it would have altered the outcome of the trial.  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Avila does not make that showing.

For example, Avila contends that surveillance footage from his apartment would have demonstrated his innocence.  But Avila testified that he personally installed the cameras and remained out on bond for nearly three years prior to trial.  (Dkt. No. 17-9 at 47, 70.)  Yet he does not identify any specific footage, describe its contents with particularity, or explain how it would have been exculpatory.  Nor does he show that such evidence existed and was unavailable to him or counsel.  Absent such a showing, his claim rests on speculation and is insufficient to establish deficient performance or prejudice.  *Green*, 882 F.2d at 1003.

Similarly, Avila asserts that his work schedule would have demonstrated his innocence, but he does not provide the records, identify specific dates or times, or explain how such evidence would have altered the outcome of the trial.  Without such detail, the claim remains conclusory and does not establish prejudice under *Strickland*.

Avila's claim regarding expert consultation fares no better.  Counsel is not constitutionally required to consult an expert in every case, and there are "countless ways to provide effective assistance in any given case."  *Richter*, 562 U.S. at 788-89

(quotations omitted).  Avila does not identify any expert, describe the substance of any proposed testimony, or demonstrate how such testimony would have affected the verdict.

As to Avila's right to testify, the Constitution does guarantee a defendant the right to take the stand on his own behalf.  *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).  But where, as here, the petitioner alleges that counsel, not the court, prevented him from testifying, the proper vehicle his contention is an ineffective assistance of counsel claim analyzed under *Strickland*.  *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).  Avila offers only his own conclusory assertion, with no indication in the record that he sought to testify or that counsel prevented him from doing so.  He also fails to identify what his testimony would have been or how it would have changed the outcome.  Notably, Avila did testify during the punishment phase, where he denied the abuse.  (Dkt. No. 17-9 at 44-75.)  On this record, he has not demonstrated prejudice.

In sum, Avila's allegations identify potential avenues of investigation but do not demonstrate that any such investigation would have produced evidence creating a reasonable probability of a different result.  That is insufficient under *Strickland*.  Ground Two is without merit.

2.  Ground Three: failure to call and subpoena character witnesses

Avila next alleges counsel was ineffective for failing to call and subpoena pastor Erick Jose Mejia Enamorado and Avila's niece, Claudia Osiris Avila Castillo, as character witnesses.  (*See* Dkt. No. 3 at 8-9; *see also* Dkt. No. 4 at 14 (Brief in

Support).)  Avila submitted two affidavits in support of this claim: one from a Claudia Lainez attesting generally to Avila's good character, and one from his niece Claudia Castillo attesting to her role in advising the family and noting Avila had no history of problems with others.  (Dkt. No. 4 at 146-48.)  No affidavit from Pastor Mejia was submitted.

Complaints about uncalled witnesses are disfavored in habeas proceedings because witness presentation is a matter of trial strategy.  *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).  Where the only evidence of a missing witness's testimony comes from the petitioner, such claims must be viewed with great caution.  *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).  To demonstrate prejudice, the petitioner "'must show not only that the testimony would have been favorable but also that the witness would have testified at trial.'"  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  "[S]peculations as to what [uncalled] witnesses would have testified is too uncertain."  *Alexander*, 775 F.2d at 602.

Avila provided no affidavit from Pastor Mejia.  Without evidence of what Mejia would have said or that he would have testified, Avila cannot establish either deficiency or prejudice.  As to his niece, however, the affidavit provided amounts to general character testimony.  Such generalized assertions do not demonstrate a reasonable probability of a different outcome, particularly where they do not address the specific allegations at issue.  Nor has Avila shown that this testimony would have materially altered the evidentiary picture presented at trial.  Moreover, Avila has not

demonstrated that counsel's decision to forego character witnesses was anything other than reasoned trial strategy.  *Strickland*, 466 U.S. at 690.

To the extent Avila argues that the absence of these witnesses affected his sentence, he likewise fails to demonstrate prejudice.  *See Daniel v. Cockrell*, 283 F.3d 697, 699 (5th Cir. 2002) (holding that unsupported allegations regarding additional evidence do not establish *Strickland* prejudice).  Avila faced a punishment range of 5 to 99 years and received a sentence of 75 years.  The jury was presented with testimony from multiple witnesses, including the complainant, a school counselor, forensic services representatives, and the examining physician.  (*See* Dkt. No. 17-7 at 51-53, 82, 86, 113, 133, 137-38; 17-8 at 11-31, 86-100.)  Avila has not shown a reasonable probability that the addition of general character testimony from two lay witnesses would have resulted in a significantly lesser sentence.  Ground Three is without merit.

    3.  <u>Ground Four: failure to present a defense and advise on plea</u>

Avila also claims counsel was ineffective for failing to present a defense and for failing to ensure that he understood the ten-year plea offer from the State.  (Dkt. No. 3 at 10.)  He asserts, as an aside, that counsel failed to request a lesser-included-offense instruction or argue for his innocence, attributing all these failures to counsel's preoccupation with his own and his family's illness from COVID-19.  (*See id.*; *see also* Dkt. No. 4 at 15-17.)

On the plea issue, the Supreme Court holds that trial counsel must communicate formal plea offers that may be favorable to the defendant, and that

12

counsel may be deficient for permitting such an offer to lapse. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). But to establish prejudice, a petitioner must demonstrate a reasonable probability that he would have accepted the offer, that the prosecution would not have withdrawn it, that the court would have accepted it, and that the end result would have been more favorable. *Id.* at 147. Avila has not made this showing.

The record contains no indication that Avila communicated any confusion about the offer to counsel or the court during the pretrial hearing where the offer was discussed. (Dkt. No. 17-6 at 21.) Moreover, Avila had the benefit of both an interpreter and bilingual trial counsel, (Dkt. No. 17-9 at 50), eliminating any suggestion of a language barrier as a source of prejudice. His allegations regarding the plea are therefore conclusory and unsupported by any evidence in the record. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (emphasizing that solemn declarations made by a defendant in open court during a plea hearing carry a "strong presumption of verity," and any subsequent allegations that lack specific factual support are subject to summary dismissal).

Avila's assertion that counsel failed to present a defense, including his claim that counsel's performance was impaired by illness, is likewise unsupported. Avila identifies no specific deficiency in counsel's trial performance beyond conclusory allegations. Such assertions do not establish deficient performance under Strickland. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case.").

Finally, Avila argues that counsel failed to request a lesser-included-offense instruction.  Under Texas law, this instruction is required only if the evidence would permit a rational jury to find that the defendant is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006).  Avila has not shown that the evidence supported such an instruction.  Accordingly, he cannot demonstrate that counsel performed deficiently in failing to request this instruction or that the outcome would have been different.  *Kinnamon v. Scott*, 33 F.3d 462, 464-65 (5th Cir. 1994).  Ground Four is without merit.

4.  <u>Ground Six: failure to object to shackling</u>

Avila alleges that counsel was ineffective for failing to object to his restraint in iron shackles throughout trial, including when he testified before the jury during the punishment phase, despite having no prior criminal history and no court finding of necessity for restraints.  (Dkt. No. 3 at 15.)  This claim fails.

The Constitution prohibits the routine use of visible restraints absent a case-specific justification.  *See Deck v. Missouri*, 544 U.S. 622, 626-29 (2005) (holding that the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a specific state interest).  But Avila has not established that any such constitutional violation occurred.  Avila himself acknowledges that during the guilt/innocence phase he sat at counsel's table with his restraints concealed.  (Dkt. No. 4 at 19.)

As to the punishment phase, Avila provides no evidence that he was visibly shackled before the jury.  He offers no witness account, no photograph, and no other objective indication that restraints were used in a manner observable to jurors. Unsupported allegations are insufficient to establish deficient performance.  *See Ochoa v. Davis*, 750 F. App'x 365, 371 (5th Cir. 2018) ("[U]nsupported allegations and pleas for presumptive prejudice are not the stuff that *Strickland* is made of.")

Because Avila has not shown that visible shackling occurred, he cannot demonstrate that counsel performed deficiently in failing to object.  Nor has he shown prejudice.  Even assuming some form of restraint was used, Avila does not establish that the jury saw it or that it affected the outcome of the proceeding. Absent such a showing, he fails to demonstrate a reasonable probability of a different result.  *See Strickland*, 466 U.S. at 694.

Here, the state court's denial of this claim was reasonable, and Ground Six is without merit.

**C.    Avila's Confrontation Clause claim does not establish a violation of clearly established federal law.  (Ground Five)**

Avila contends that admission of the expert testimony of Dr. Elena Doskey de Lobon violated his Sixth Amendment right to confrontation because Dr. Doskey based her opinions in part on the forensic interview conducted by Ms. Bernadette Yupit-Martinez, whom Avila claims he had no adequate opportunity to cross-examine.  (Dkt. No. 3 at 15; Dkt. No. 4 at 18.)  This claim is without merit.

The Confrontation Clause of the Sixth Amendment bars admission of testimonial hearsay statements by a witness who did not appear at trial unless the declarant was unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). But the right of confrontation guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). The constitutional right is satisfied when defense counsel receives wide latitude to question witnesses, and the extent of cross-examination is left to the sound discretion of the trial court. *Id.* at 679.

Here, the record shows that Ms. Yupit-Martinez testified at trial and was subject to cross-examination by defense counsel. (Dkt. 17-7 at 128-29, 131, 144-59.) Avila does not identify any restrictions imposed by the trial court that prevented meaningful cross-examination. Avila therefore had the opportunity to physically face Ms. Yupit-Martinez and to challenge her account before the jury. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). The fact that counsel objected to portions of her testimony or that the examination did not proceed in the manner Avila now prefers does not establish a violation of the Confrontation Clause. *See United States v. Hitt*, 473 F.3d 146, 150 (5th Cir. 2006).

To the extent Avila challenges Dr. Doskey's reliance on information from the forensic interview, he has not shown that any testimonial hearsay was admitted in violation of *Crawford* or that he was denied the opportunity to confront the declarant.

16

Nor does he identify specific statements that were improperly admitted for their truth.

Even if some marginal Confrontation Clause error could be identified in the admission of Dr. Doskey's testimony (*see* Dkt. No. 17-8 at 133-159), alleged violations of the right to confrontation are subject to harmless-error analysis. *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006). Habeas relief is not available for trial error unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Here, Avila does not show that Dr. Doskey's testimony had a substantial effect on the jury's verdict. *Idaho v. Wright*, 497 U.S. 805, 823 (1989) (corroborating evidence may be considered in harmless error analysis). Absent such a showing, habeas relief is not warranted. Ground Five is without merit.

## IV.  RECOMMENDATION

The Court should deny the Petition for a Writ of Habeas Corpus by a Person in State Custody (Dkt. No. 3) with prejudice.

**SO RECOMMENDED** on March 20, 2026.

_____

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

17

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to object to 14 days).